**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **THE INSULATION COMPANY, LLC**<br><br>　　　Plaintiff,<br><br>　　v.<br><br>**PELCO BUILDERS, INC., REED ST BUILDERS, LLC**, **LEONARD PELULLO, PETER PELULLO, JOHN DOES 1-10, AND ABC CORPS. 1-10,**<br><br>　　　Defendants. | **Civil Action No.**<br><br><br>**COMPLAINT & JURY DEMAND** |

Plaintiff The Insulation Company, LLC ("Plaintiff"), by way of Complaint against Defendants Pelco Builders, Inc. ("Pelco"), Reed St Builders, LLC ("Reed St"), Leonard Pelullo ("L. Pelullo"), and Peter Pelullo ("P. Pelullo") (collectively, "Defendants," unless otherwise referred to), hereby alleges:

## INTRODUCTION AND NATURE OF THE CASE

1.　This is an action for breach of contract in connection with three construction projects located at (1) 2101 Washington Avenue, Philadelphia, PA 19146, (2) 122 Salina Road, Sewell, NJ 08080, and (3) 1120 Frankford Avenue, Philadelphia, PA 19125, as well as violations of the Contractor and Subcontractor Payment Act ("CASPA"), the Pennsylvania Uniform Voidable Transaction Act ("UVTA"), the New Jersey Prompt Payment Act (the "PPA") among other quasi-contractual claims.

## THE PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff is a limited liability company organized and existing under the laws of the State of New Jersey with a registered business address at 1 Rothbury Drive, Lumberton, New Jersey 08048, County of Burlington.

3.      Upon information and belief, Pelco is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a registered business address at 699 West Glenrose Road, Coatesville, Pennsylvania 19320-4931, County of Chester.

4.      Upon information and belief, Reed St is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania with a registered business address at 2501 Wharton Street, Building K, Philadelphia, PA 19146, County of Philadelphia.

5.      Upon information and belief, L. Pelullo is an individual residing in the Commonwealth of Pennsylvania with a registered business address at 699 West Glenrose Road, Coatesville, Pennsylvania 19320-4931, County of Chester, and is an owner, officer, or member of Defendant Pelco.

6.      Upon information and belief, P. Pelullo is an individual residing in the State of Pennsylvania with a registered business address at 2501 Wharton Street, Building K, Philadelphia, PA 19146, County of Philadelphia, and is an owner, officer, principal, or member of Defendants Benchmark and Reed St.

7.      John Does 1-10 are fictitious individuals that may be identified through discovery as liable to Plaintiff for the damages it has suffered.

8.      ABC Corps. 1-10 are fictitious entities that may be identified through discovery as liable to Plaintiff for the damages it has suffered.

- 2 -

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10. The allegations against these Defendants are so intertwined that aggregation of the claims of a single plaintiff against multiple defendants is appropriate as the multiple Defendants in this action are jointly liable to Plaintiff.

11. Regardless, the jurisdictional threshold is met in this matter as the claims involved are under statutes which provide significant interest and attorney's fees.

12. This Court has personal jurisdiction over Defendants because they are Pennsylvania residents that regularly transact business in Pennsylvania, entered into and performed construction subcontracts in Pennsylvania, and committed tortious conduct in Pennsylvania.

13. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants reside in Pennsylvania, transact business throughout Pennsylvania, including in this District, and a substantial part of the events or omissions giving rise to the instant claims occurred in Pennsylvania.

## FACTUAL ALLEGATIONS

### A. The Projects and Subcontracts

14. This matter concerns three (3) construction projects for which Defendants Pelco and Reed St (collectively, the "Entities") retained Plaintiff as a subcontractor.

15. On January 25, 2024, Defendant Pelco and Plaintiff executed a written subcontract in the amount of $685,000.00, for insulation services and materials at the property located at 2101 Washington Avenue, Philadelphia, Pennsylvania 19146 (the "Chocolate Factory Subcontract"), known as the Frankford Chocolate Factory Project ("Chocolate Factory Project").

BE.16529234.1/INS065-287609

16.    The Chocolate Factory Subcontract incorporates three proposals for additional work:

    a.  Proposal 2407101, dated July 1, 2024 for additional fiberglass work, in the amount of $600.00;

    b.  Proposal 2411102, dated November 4, 2024, for additional firestop work, in the amount of $22,895.00; and

    c.  Proposal 2501107, dated January 3, 2025, for additional stairwell exterior work, in the amount of $4,400.00.

17.    The change orders brought the total price of the Chocolate Factory Subcontract to $712,895.00.

18.    On May 14, 2024, Defendant Pelco and Plaintiff executed a written subcontract in the amount of $3,735.00, for insulation services and materials at the property located at 122 Salina Road, Sewell, New Jersey 08080 (the "WW Subcontract"), known as the Wigs and Wishes Project ("WW Project").

19.    On December 20, 2023, Defendant Reed St and Plaintiff executed a written subcontract in the amount of $213,670.00, for insulation services and materials at the property located at 1120 Frankford Avenue, Philadelphia, PA 19125 (the "1120 Frankford Subcontract"), known as the Frankford Project ("Frankford Project").

20.    The 1120 Frankford Subcontract incorporates two change orders and a proposal:

    a.  Change Order No. 1, dated February 26, 2024, for 5th floor ceiling upgrades, in the amount of $63,385.00;

    b.  Change Order No. 2, dated March 1, 2024, for further floor and ceiling work, in the amount of $43,685.00; and

- 4 -

c.  Proposal 2502112, dated February 12, 2025, for insulation repair, in the amount of $2,800.00.

21.    Each Subcontract required timely progress payments, allowed retainage, and prohibited improper withholding.

**B.    The Individual Defendants**

22.    L. Pelullo is and was a registered Officer of Pelco with the Commonwealth of Pennsylvania.

23.    Upon information and belief, P. Pelullo is and was an owner and/or member of Reed St.

24.    Upon information and belief, P. Pelullo is and was an owner or principal of one, or more than one of, the Entities.

25.    Upon information and belief, the individual Defendants share a familial relation.

26.    Upon information and belief, L. Pelullo is P. Pelullo's father.

27.    Upon information and belief, L. Pelullo and P. Pelullo direct and control each of the Entities.

**C.    The Construction Projects**

***i.    Pelco's Chocolate Factory Project***

28.    Plaintiff furnished labor, materials, and insulation pursuant to the Chocolate Factory Subcontract and the accepted scope and work changes.

29.    Pelco received and benefitted from Plaintiff's work, including additional work accepted via written proposals and pay applications.

30.    Pelco made partial payment to Plaintiff, but has not paid in full for Plaintiff's services.

BE.16529234.1/INS065-287609

31.     As of the date of this filing, Pelco's outstanding balance for the Chocolate Factory Project is $75,189.50.

32.     Plaintiff has repeatedly demanded payment, and Pelco has repeatedly refused to pay.

33.     Pelco's refusal to pay undisputed retainage absent a final lien waiver, and its refusal to pay for additional work that it authorized, violate Pennsylvania law and the Chocolate Factory Subcontract.

### ii.     Pelco's WW Project

34.     Plaintiff agreed to furnish insulation and firestopping for the WW Project pursuant to the WW Subcontract.

35.     Plaintiff completed this work, and on June 26, 2024, sent Pelco an invoice in the amount of $3,735.00.

36.     Pelco failed to pay this undisputed invoice, and $3,375.00 is still due and owing to Plaintiff.

37.     The owner of the WW Project confirmed that Pelco has been paid, in full, despite the fact that Pelco has told Plaintiff that it has not been paid and that is why payment has not been remitted to Plaintiff.

38.     Plaintiff has repeatedly demanded payment from Pelco for this outstanding balance.

### iii.     Reed Street's 1120 Frankford Project

39.     Plaintiff performed the agreed insulation, firestopping, air seal, and upgrades per the 1120 Frankford Subcontract and change orders.

40.     Reed Street accepted Plaintiff's labor and materials.

41.     Reed St made partial payment to Plaintiff, but has not paid in full for Plaintiff's services.

BE.16529234.1/INS065-287609

42.     As of this filing, Reed Street owes Plaintiff $26,500.60 on the 1120 Frankford Project, inclusive of additional work.

43.     Plaintiff sent a final invoice to Reed Street on February 12, 2025.

44.     Plaintiff has repeatedly demanded payment for the outstanding balance.

45.     Reed Street has failed to pay the outstanding balance owed to Plaintiff.

**D.     Defendants' Coordinated Conduct and Bad Faith**

46.     Pelco and Reed St are a family-controlled construction enterprise. Pelco is run by L. Pelullo and Reed St is run by his son, P. Pelullo.

47.     Upon information and belief, the Entities share resources, personnel, and communications, and regularly coordinate payment practices and decision-making across Entities.

48.     Upon information and belief, L. Pelullo and P. Pelullo exercise control over the Entities and direct their actions with respect to payments, contract performance, and dealings with Plaintiff.

49.     Upon information and belief, L. Pelullo, and P. Pelullo operate each of the Entities as a single enterprise.

50.     Upon information and belief, Defendants operate without adequate capitalization, commingle funds, disregard corporate formalities, and transfer assets among each other and affiliates to hinder, delay or defraud subcontractors and creditors, including Plaintiff.

51.     Upon information and belief, L. Pelullo, and P. Pelullo operate each of the Entities so as to serve their own personal ends so that, in reality, there is no difference between Pelco and Reed St.

52.     On August 14, 2025, Plaintiff emailed Pelco, with P. Pelullo copied on the email, requesting a payment status update regarding outstanding invoices totaling $75,189.50 for work

completed pursuant to the Chocolate Factory Subcontract. Included in the list of outstanding invoices was Invoice 2501107, representing a previously authorized and completed change work order for stairwell spray foam in the amount of $4,400.00 ("Change Work Order").

53.     P. Pelullo personally authorized the Change Work Order that Plaintiff immediately performed to accommodate Pelco's schedule and timeline.

54.     In January 2025, once the Change Work Order was complete, Plaintiff sent Pelco an invoice in the amount of $4,400.00.

55.     On August 19, 2025, in response to Plaintiff's email, Pelco admitted that it would only release $70,789.50 out of the outstanding $75,189.50 owed, and only if Plaintiff executed a final lien waiver and release. Simultaneously, Pelco refused to pay the separately authorized Change Work Order, stating, "If you do not want to accept this, you will need to go the legal route because that is all ownership is willing to pay."

56.     When Plaintiff asked for a reason why Pelco would not pay the previously authorized Change Work Order, L. Pelullo responded "The change order is denied," without further explanation.

57.     Plaintiff repeatedly demanded payment in full and an explanation for non-payment.

58.     In response, Pelco wrote that "Len already replied a couple of times that it's not going to happen. You can either sign a final lien waiver and collect $70,789.50 or proceed as you wish."

59.     In the same email chain, Plaintiff also demanded payment from Pelco for the outstanding balance owed to Plaintiff for work completed on the WW Subcontract, in the amount of $3,735.00.

60.     Upon information and belief, L. Pelullo and P. Pelullo coordinated to create pretexts to delay, reduce, or deny payment to Plaintiff for work performed pursuant to the respective Subcontracts.

61.     Upon information and belief, Pelco and Reed St's disputeswere not genuine obstacles to payment, but were instead used by the Entities - through organized efforts by L. Pelullo and P. Pelullo - to deny Plaintiff the benefits and reasonable expectations under the respective Subcontracts.

62.     Defendants' conduct has harmed Plaintiff, which is out of pocket for labor, materials, overhead, and profit on work Defendants have accepted.

## FIRST COUNT
### (Breach of Contract – Against Defendants Pelco and Reed St)

63.     Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

64.     Plaintiff and Defendants Pelco and Reed St entered into the Subcontracts for construction services on the respective Projects.

65.     The respective Subcontracts between Plaintiff and Pelco and Reed St are valid and binding agreements entered into between the parties and agreed to by Defendants under no duress or undue influence.

66.     Plaintiff fully performed, or was ready, willing, and able to perform its obligations under the Chocolate Factory Subcontract.

67.     Pelco materially breached the Chocolate Factory Subcontract by failing and refusing to pay $75,189.50 due and owing to Plaintiff.

68.     Plaintiff fully performed, or was ready, willing, and able to perform its obligations under the WW Subcontract.

69.     Pelco materially breached the WW Subcontract by failing and refusing to pay $3,735.00 due and owing to Plaintiff.

70.     Plaintiff fully performed, or was ready, willing, and able to perform its obligations under the 1120 Frankford Subcontract.

71.     Reed St materially breached the 1120 Frankford Subcontract by failing and refusing to pay $26,500.60 due and owing to Plaintiff.

72.     Defendants Pelco and Reed St's failure and refusal to pay Plaintiff the outstanding amounts due and owing constitutes a material breach of the respective Subcontracts.

73.     As a result of Defendants Pelco and Reed St's substantial and material breaches, Plaintiff has suffered and continues to suffer substantial damages.

### SECOND COUNT
### (Breach of the Implied Contract – Against Defendants Pelco and Reed St)

74.     Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

75.     Defendants Pelco and Reed St promised to pay Plaintiff for the full value of the labor performed and services rendered at the Property.

76.     However, Pelco and Reed St failed to fulfill their promises and obligations.

77.     Plaintiff has demanded that Pelco, and Reed St perform on their promises, but Defendants refused to do so.

78.     A contract is inferred from the parties' conduct and from the circumstances of the relationship between the parties, as a reasonable person in Pelco and Reed St's position would know that Plaintiff was performing the services expecting that it would be paid for them.

79.     As a direct, proximate and foreseeable result of Pelco and Reed St's wrongful actions and breach of their promises, Plaintiff has suffered and continues to suffer substantial damages.

BE.16529234.1/INS065-287609

## THIRD COUNT
### (Breach of the Implied Covenant of Good Faith and Fair Dealing – Against Defendants Pelco and Reed St)

80.     Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

81.     Under Pennsylvania law, the Subcontracts contain an implied covenant of good faith and fair dealing.

82.     To act in good faith and deal fairly, a party must act in a way that is honest and faithful to the agreed-upon purposes of the Subcontracts and consistent with the reasonable expectations of the parties.

83.     Defendants Pelco and Reed St's conduct as set forth above constitutes a breach of the implied covenant of good faith and fair dealing as Defendants Pelco and Reed St have acted in bad faith, with dishonesty, and/or with an improper motive to destroy or injure the rights of Plaintiff to receive the benefits and reasonable expectations of the Subcontracts.

84.     By breaching the implied covenant of good faith and fair dealing, Defendants Pelco and Reed St denied Plaintiff of the benefit of the bargain initially intended by the parties.

85.     Defendants Pelco and Reed St's breach of the implied covenant is the direct and proximate cause of substantial damages suffered by Plaintiff.

## FOURTH COUNT
### (Unjust Enrichment – Against Pelco and Reed St)

86.     Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

87.     Plaintiff provided services and labor to Pelco and Reed St, which Defendants Pelco and Reed St have failed to remit payment for.

88.     Therefore, Defendants Pelco and Reed St have been provided with an unlawful benefit.

BE.16529234.1/INS065-287609

89.     Since Defendants Pelco and Reed St failed to remit payment to Plaintiff, the retention of that benefit would be unjust.

90.     As a result of Defendants Pelco and Reed St's failure to pay Plaintiff the full amount for the goods and services rendered pursuant to the respective Subcontracts, Defendants Pelco and Reed St have been unjustly enriched at Plaintiff's expense.

91.     As a direct, proximate and foreseeable result of Pelco and Reed St's wrongful actions and breach of its promises, Plaintiff has suffered and continues to suffer substantial damages.

### FIFTH COUNT
**(*Quantum Meruit* – Against Defendants Pelco and Reed St)**

92.     Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein

93.     Plaintiff provided at least $78,924.50 in labor and services to Defendant Pelco for which it has not been compensated.

94.     Plaintiff provided at least $26,500.60 in labor and services to Defendant Reed St for which it has not been compensated.

95.     Defendants Pelco and Reed St knew, at the time of performance, that Plaintiff reasonably expected to be fairly compensated for labor performed and the services provided pursuant to the respective Subcontracts.

96.     Defendants Pelco and Reed St promised to pay Plaintiff for the full amount of labor performed and services rendered in connection with the respective Subcontracts.

97.     Payment has not been made for the full amount of the labor performed and services rendered pursuant to the Subcontracts.

- 12 -

98.     As a result of the foregoing, Plaintiff is entitled to quantum meruit compensation for the labor performed and services rendered pursuant to the respective Subcontracts, for which Plaintiff has not been paid.

## SIXTH COUNT
### (Promissory Estoppel – Against Pelco and Reed St)

99.     Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

100.    Defendants Pelco and Reed St promised it would pay Plaintiff for the full amount of labor performed and services rendered pursuant to the respective Subcontracts.

101.    Defendants Pelco and Reed St expected that Plaintiff would rely on their respective promises to pay.

102.    Plaintiff reasonably relied on those promises and acted in reliance on those promises to its detriment.

103.    As a direct, proximate and foreseeable result of Defendants Pelco and Reed St's wrongful actions and breach of its promises, Plaintiff has suffered and continues to suffer substantial damages.

## SEVENTH COUNT
### (Violation of the Pennsylvania Contractor and Subcontractor Payment Act, Pa. St. 73 P.S. § 501 *et seq.* – Against Pelco and Reed St)

104.    Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein

105.    Pelco is a "contractor" within the meaning of CASPA

106.    Pelco is an "inspector" within the meaning of CASPA.

107.    Plaintiff is a "subcontractor" within the meaning of CASPA.

108.    Plaintiff performed in accordance with the provisions of the Chocolate Factory Subcontract it had with Pelco.

109.    Pelco accepted the work performed by Plaintiff under the Chocolate Factory Subcontract.

110.    Over thirty (30) days have passed since final acceptance of Plaintiff' work, and Pelco has unreasonably withheld and failed to pay retainage to Plaintiff.

111.    Pelco accepted the work performed by Plaintiff under the WW Subcontract.

112.    Over thirty (30) days have passed since final acceptance of Plaintiff' work, and Pelco has unreasonably withheld and failed to pay retainage to Plaintiff.

113.    The services rendered by Plaintiff set forth under the Chocolate Factory Subcontract described in this action constitute "improvements" within the meaning of the CASPA.

114.    Plaintiff has billed Pelco for the construction services performed under both Subcontracts.

115.    More than fourteen (14) days have elapsed since Plaintiff billed Pelco for the labor performed and services rendered under the Chocolate Factory Subcontract.

116.    Pelco did not, within fourteen (14) days of billing, provide a written statement of any amounts withheld, nor did it identify any deficiency items and/or and the reason for withholding payment.

117.    On the amounts billed by Plaintiff to Pelco as set forth above, there is still due and owing to Plaintiff from Pelco an amount not less than $75,189.50.

118.    More than fourteen (14) days have elapsed since Plaintiff billed Pelco for the labor performed and services rendered under the WW Subcontract.

119.    Pelco did not, within fourteen (14) days of billing, provide a written statement of any amounts withheld, nor did it identify any deficiency items and/or and the reason for withholding payment.

BE.16529234.1/INS065-287609

120.    Pelco's actions and inactions set forth above constitute violations of CASPA.

121.    Pelco's violation of the CASPA entitles Plaintiff to recover the balances due and owing of not less than: (a) $75,189.50, plus interest at a rate of 1% per month for work complete pursuant to the Chocolate Factory Subcontract and (b) reasonable attorneys' fees and costs.

122.    Reed St is a "contractor" within the meaning of CASPA.

123.    Reed St is an "inspector" within the meaning of CASPA.

124.    Plaintiff performed in accordance with the provisions of the 1120 Frankford Subcontract it had with Reed St.

125.    Reed St accepted the work performed by Plaintiff at the 1120 Frankford Project.

126.    Over thirty (30) days have passed since final acceptance of Plaintiff' work, and Reed St has unreasonably withheld and failed to pay retainage to Plaintiff.

127.    The services rendered by Plaintiff set forth under the 1120 Frankford Subcontract described in this action constitute "improvements" within the meaning of the CASPA.

128.    Plaintiff has billed Reed St for the construction services performed under the 1120 Frankford Subcontract.

129.    More than fourteen (14) days have elapsed since Plaintiff billed Reed St for the labor performed and services rendered under the 1120 Frankford Subcontract.

130.    Reed St did not, within fourteen (14) days of billing, provide a written statement of any amounts withheld, nor did it identify any deficiency items and/or the reason for withholding payment.

131.    On the amounts billed by Plaintiff to Reed St as set forth above, there is still due and owing to Plaintiff from Reed St an amount not less than $26,500.60.

132.    Reed St's actions and inactions set forth above constitute violations of CASPA.

133.    Reed St's violations of CASPA entitles Plaintiff to recover the balances due and owing of not less than: $26,500.60, plus interest at a rate of 1% per month for work complete pursuant to the 1120 Frankford Subcontract, plus reasonable attorneys' fees and costs.

134.    As a direct, proximate and foreseeable result of Benchmarks, Pelco, and Reed St's wrongful actions and breach of its promises, Plaintiff has suffered and continues to suffer substantial damages.

**EIGHTH COUNT**
**(Violation of the New Jersey Prompt Payment Act, N.J.S.A. § 2A:30A-1 *et seq.* – Against Pelco)**

135.    Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein

136.    Pelco is a "prime contractor" within the meaning of the PPA.

137.    Plaintiff is a subcontractor within the meaning of the PPA.

138.    Plaintiff performed in accordance with the provisions of the WW Subcontract.

139.    Pelco accepted the work performed by Plaintiff at the Property.

140.    The services rendered by Plaintiff set forth under the WW Subcontract described in this action constitute "improvements" within the meaning of the PPA.

141.    Plaintiff has billed Pelco for the construction services performed under the WW Subcontract.

142.    More than ten (10) days have elapsed since Plaintiff billed Pelco for the labor performed and services rendered.

143.    Pelco did not, within ten (10) days of billing, provide a written statement of any amounts withheld and the reason for withholding payment.

144.    On the amounts billed by Plaintiff to Pelco set forth above, there is still due and owing to Plaintiff from Pelco an amount not less than $3,375.00.

BE.16529234.1/INS065-287609

145.    Pelco's actions and inactions set forth above constitute a violation of the PPA.

146.    Pelco's violation of the PPA entitles Plaintiff to recover the balance due and owing of not less than $3,375.00, plus interest at a rate of the prime rate plus 1%, plus reasonable attorneys' fees and costs.

147.    As a direct, proximate and foreseeable result of Pelco's wrongful actions and breach of its promises, Plaintiff has suffered and continues to suffer substantial damages.

## NINTH COUNT
### (Accounts Rendered – Against Defendants Pelco and Reed St)

148.    Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

149.    Pelco expressly promised to pay Plaintiff certain amounts as specified in the Chocolate Factory Subcontract for Plaintiff's services.

150.    Out of $685,000.00 owed by Pelco under the Chocolate Factory Subcontract, Benchmark has only remitted payment to Plaintiff in the amount of $609,810.50.

151.    The balance of the amount due to Plaintiff is admitted to be correct and there is a mutual agreement as to the correctness of the amount due established by the circumstances in which mutual assent may be implied.

152.    Pelco expressly promised to pay Plaintiff certain amounts as specified in the WW Subcontract for Plaintiff's services.

153.    Out of $3,735.00 owed by Pelco under the WW Subcontract, Pelco has not remitted any payment to Plaintiff.

154.    The balance of the amount due to Plaintiff is admitted to be correct and there is a mutual agreement as to the correctness of the amount due established by the circumstances in which mutual assent may be implied.

BE.16529234.1/INS065-287609

155.    Reed St expressly promised to pay Plaintiff certain amounts as specified in the 1120 Frankford Subcontract for Plaintiff's services.

156.    Out of $213,670.00 owed by Reed St under the 1120 Frankford Subcontract, Benchmark has only remitted payment to Plaintiff in the amount of $184,369.40.

157.    The balance of the amount due to Plaintiff is admitted to be correct and there is a mutual agreement as to the correctness of the amount due established by the circumstances in which mutual assent may be implied.

158.    As a direct, proximate and foreseeable result of Defendants Benchmark, Pelco, and Reed St's wrongful actions and breach of its promises, Plaintiff has suffered and continues to suffer substantial damages.

**TENTH COUNT**
**(Accounts Stated – Against Pelco and Reed St)**

159.    Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

160.    Pelco expressly promised to pay Plaintiff certain amounts as specified in the Chocolate Factory Subcontract for Plaintiff's services.

161.    Out of $685,000.00 owed by Pelco under the Chocolate Factory Subcontract, Benchmark has only remitted payment to Plaintiff in the amount of $609,810.50.

162.    The balance of the amount due to Plaintiff is admitted to be correct and there is a mutual agreement as to the correctness of the amount due established by the circumstances in which mutual assent may be implied.

163.    Pelco has failed to object to the amount due within a reasonable amount of time.

164.    Pelco expressly promised to pay Plaintiff certain amounts as specified in the WW Subcontract for Plaintiff's services.

165.    Out of $3,735.00 owed by Pelco under the WW Subcontract, Pelco has not remitted any payment to Plaintiff.

166.    The balance of the amount due to Plaintiff is admitted to be correct and there is a mutual agreement as to the correctness of the amount due established by the circumstances in which mutual assent may be implied.

167.    Pelco has failed to object to the amount due within a reasonable amount of time.

168.    Reed St expressly promised to pay Plaintiff certain amounts as specified in the 1120 Frankford Subcontract for Plaintiff's services.

169.    Out of $213,670.00 owed by Reed St under the 1120 Frankford Subcontract, Benchmark has only remitted payment to Plaintiff in the amount of $184,369.40.

170.    The balance of the amount due to Plaintiff is admitted to be correct and there is a mutual agreement as to the correctness of the amount due established by the circumstances in which mutual assent may be implied.

171.    Reed St has failed to object to the amount due within a reasonable amount of time.

172.    As a direct, proximate and foreseeable result of Defendant Benchmark, Pelco, and Reed St's wrongful actions and breach of its promises, Plaintiff has suffered and continues to suffer substantial damages.

## ELEVENTH COUNT
### (Common Enterprise Liability – Against Defendants Pelco and Reed St)

173.    Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

174.    Pelco and Reed St are organized, dominated and controlled by L. Pelullo and P. Pelullo, who use these entities to conduct their own personal business.

175.    L. Pelullo and P. Pelullo have used these Entities to perpetrate a fraud upon Plaintiff in the form of attempting to deprive Plaintiff of its rights under CASPA/PPA.

- 19 -

176.    For purposes of this lawsuit, it is alleged that any of the acts allegedly taken by Pelco are also the acts of Reed St, and vice versa, with all Entities operating to serve the personal business and interests of L. Pelullo and P. Pelullo such that they are a common enterprise and should be treated as one and the same for purposes of liability on any of the causes of action.

## TWELFTH COUNT
### (Alter Ego Liability Against Pelco and Reed St)

177.    Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

178.    Pelco and Reed St are organized, dominated, and controlled by L. Pelullo and P. Pelullo, who uses these entities to conduct their own personal business.

179.    L. Pelullo and P. Pelullo have used these entities to perpetrate a fraud upon Plaintiff in the form of attempting to deprive Plaintiff of its rights under CASPA.

180.    For purposes of this lawsuit, it is alleged that any of the acts allegedly taken by Benchmark and/or Pelco are also the acts of Reed St, and vice versa, with all Entities operating as alter egos of each other, and all with the goal of to serve the personal business and interests of Jalilvand, L. Pelullo, and P. Pelullo, such that they are alter egos of each other and should be treated as one and the same for purposes of liability.

## THIRTEENTH COUNT
### (Piercing the Corporate Veil – Against Defendants L. Pelullo and P. Pelullo)

181.    Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

182.    All of Pelco and Reed are operated and organized as mere instrumentalities L. Pelullo and P. Pelullo, personally.

183.    Upon information and belief, all of these Entities have been operated without regard to corporate formalities and are not capitalized sufficient to operate as independent businesses.

184.    The operation of these Entities has been to perpetrate a fraud upon Plaintiff in the form of attempting to deprive Plaintiff of its rights under CASPA/PPA.

185.    Plaintiff has suffered significant damages as a direct result and caused by L. Pelullo and/or P. Pelullo's operation of the foregoing entities.

<u>**FOURTEENTH COUNT**</u>
**(Uniform Voidable Transactions Act, 12 Pa. C.S.A. § 5101 *et seq*.,**
**Against All Defendants)**

186.    Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

187.    Upon information and belief, L. Pelullo, and P. Pelullo are "insiders" Pelco and Reed St. under Pennsylvania's Uniform Voidable Transactions Act, 12 Pa. C.S.A. § 5101 et seq. ("UVTA").

188.    Upon information and belief, some or all of Pelco, Reed St are each "affiliates" of one another within the meaning of the UVTA.

189.    Plaintiff's claims alleged above are "claims" within the meaning of the UVTA.

190.    Plaintiff is a "creditor" within the meaning of the UVTA.

191.    Pelco and Reed St are "debtors" within the meaning of the UVTA.

192.    The monies due and owing to Plaintiff are a "debt" within the meaning of the UVTA.

193.    Based upon Pelco and Reed St's failure pay tens of thousands of dollars in claims, it is clear that Pelco and Reed St are debtors not paying their debts as they become due.

194.    Pelco and Reed St do not have a bona fide dispute within the meaning of the UVTA as to Plaintiff's claims.

195.    Pelco and Reed St are presumed insolvent under the UVTA based upon its failure to pay its debts as they become due.

BE.16529234.1/INS065-287609

196.    Upon information and belief, Pelco and Reed St have transferred property and anything of value to insiders and affiliates despite its insolvency and to the detriment of creditors like Plaintiff.

197.    Upon information and belief, Pelco and Reed St made transfers before and after its obligation to Plaintiff arose and made the transfer either with actual intent to hinder, delay, or defraud Plaintiff, or did so without receiving reasonably equivalent value in exchange for the transfers.

198.    Upon information and belief, Pelco, and Reed St intended to incur or reasonably should have believed that it would incur debts beyond its ability to pay as they became due.

199.    Upon information and belief, Pelco and Reed St made the voidable transfers when it was insolvent was become insolvent shortly after the transfers.

200.    All of the voidable transfers should be undone and returned, where they should then be used to pay creditors like Plaintiff.

## FIFTEENTH COUNT
### (Civil Conspiracy – Against L. Pelullo, and P. Pelullo)

201.    Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

202.    Upon information and belief, L. Pelullo, and P. Pelullo, discovery will reveal made an agreement or had a plan with a common design, to deny Plaintiff monies lawfully due and owing to Plaintiff pursuant to the Subcontracts.

203.    L. Pelullo and P. Pelullo had an additional agreement or had a plan with a common design to deprive Plaintiff of its rights under CASPA by attempting to have Plaintiff void its rights under CASPA without payment.

204.    L. Pelullo and P. Pelullo had an additional agreement or had a plan with a common design to deprive Plaintiff of its rights by coordinating and directing Entities to fabricate pretextual

situations to justify denying Plaintiff full compensation for the work it completed pursuant to the respective Subcontracts.

205.    Plaintiff has been damaged as a result of these conspiracies by L. Pelullo and P. Pelullo.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks Judgment and relief against Defendants, jointly and severally, as follows:

A.   Declaration of amount due to Plaintiff;

B.   Avoidance of any transfer by the Defendants deemed to be in violation of the UVTA;

C.   An attachment of any asset transferred or other property of the Defendants deemed to be in violation of the UVTA;

D.   The appointment of a receiver to take charge of the assets transferred or of other property of the Defendants deemed to be in violation of the UVTA;

E.   Compensatory, direct, indirect, consequential and special damages;

F.   Punitive damages;

G.   Interest at a rate of the 1% per month pursuant to 73 P.S. § 512(a);

H.   Prejudgment and post judgment interest;

I.   Attorney's fees and cost of suit pursuant to 73 P.S. § 512(b) and otherwise as the Court deems equitable and proper; and

J.   Any other relief the Court deems equitable and proper.

BE.16529234.1/INS065-287609

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby requests a trial by jury on all issues and claims so triable.

**BRACH EICHLER LLC**

*Attorneys for Plaintiff The Insulation Company, LLC*

Thomas Kamvosoulis, Esq.
tkamvosoulis@bracheichler.com
**BRACH EICHLER LLC**
101 Eisenhower Pkwy
Roseland, New Jersey 07069
Tel: (973) 228-5700
Fax: (973) 618-5539

Dated: February 10, 2026

- 24 -

## CERTIFICATION OF SERVICE

I, the undersigned, certify that on February 10, 2026, I electronically filed the foregoing Complaint with the Clerk of Court using the Court's CM/ECF system, which will send electronic notification of said filing to all counsel of record in this matter, who are ECF participants, and that constitutes service thereon pursuant to Local Rule 5.7.

**BRACH EICHLER LLC**

*Attorneys for Plaintiff The Insulation Company, LLC*

_____

Thomas Kamvosoulis, Esq.
tkamvosoulis@bracheichler.com
**BRACH EICHLER LLC**
101 Eisenhower Pkwy
Roseland, New Jersey 07069
Tel: (973) 228-5700
Fax: (973) 618-5539

Dated: February 10, 2026

- 25 -

BE.16529234.1/INS065-287609